UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

JASON MARTINEZ

                        Petitioner,

                                                    19-cr-536 (PKC)
                                                    25-cv-3638 (PKC)

            -against-
                                                    OPINION AND ORDER


UNITED STATES OF AMERICA

                        Respondent.

------------------------------------------------------------x

CASTEL, U.S.D.J.:

            Jason Martinez, proceeding pro se, moves to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255.  Martinez entered a plea of guilty to conspiracy to

commit robbery in violation of 18 U.S.C. § 1951 (Count Three) and conspiracy to distribute and

possess with the intent to distribute cocaine, in violation of 18 U.S.C. §§ 846 and 841(b)(1)(A)

(Count Six).  On February 4, 2022, the Court sentenced Martinez principally to 154 months'

imprisonment, fourteen months below the bottom of the advisory Guidelines range.  (ECF 223.)

            Martinez brings constitutional challenges to his sentence and urges that he was

denied the effective assistance of counsel guaranteed by the Sixth Amendment.  For the reasons

that will be explained, Martinez's motion for section 2255 relief will be denied.

BACKGROUND

A. <u>Offense Conduct</u>

    At sentencing, Martinez did not object to the facts as contained in the Revised Final Presentence Report (the "PSR") as revised by the Court.  (ECF 235 at Tr. 18-21.)[1]  The Court adopted those facts as its finding of facts.  (<u>Id.</u> at Tr. 17.)

    The PSR describes the participation of Martinez in a conspiracy to commit a gunpoint robbery of a drug shipment in a Bronx, New York, apartment.  (ECF 224 ¶¶ 4, 20.) Martinez was informed that members of a Puerto Rico based drug-trafficking organization ("DTO") expected to receive a shipment of cocaine at the apartment.  (<u>Id.</u> ¶ 20.)  The dramatic circumstances of the May 29, 2019, gunpoint robbery, for which Martinez was an organizer, leader, manager or supervisor, are well described in the PSR:

> At approximately 7:14pm on May 29, 2019, while RODRIGUEZ [a member of the Puerto Rico based DTO] was waiting for several individuals to come pick up the duffel bags of cocaine, four robbers pushed their way into the third-floor apartment . . . . There were six adults and four children in the apartment at the time . . . at least three of the robbers had guns and were pointing those guns at the victims . . . . RODRIGUEZ pushed a window air conditioning unit of the window to allow his girlfriend and the two other tenants to escape from the apartment. RODRIGUEZ'S girlfriend and one of the tenants jumped out of the third-floor window. Individual-1 badly injured his hip in the fall (and later required hospitalization and surgery). When RODRIGUEZ opened the bedroom door to permit Individual-2 to run to her four children, who were being held at gunpoint and were screaming for help in another room of the apartment, one of the robbers reached into the bedroom with a gun. As RODRIGUEZ wrestled with one of the robbers, RODRIGUEZ inadvertently cocked the gun and a bullet fell out. Two of the robbers eventually forced their way into the room and pistol-whipped RODRIGUEZ in the forehead, causing lacerations and bleeding. RODRIGUEZ pointed out the duffel bags that were packed with cocaine, which the robbers took with them before fleeing the apartment. According to the Government, the cocaine

---

[1] Defendant raised one objection to the facts and suggested a correction, which was agreed to by the government. (ECF 235 at Tr. 18-20.)  The Court made the changes requested by defendant.  (<u>Id.</u> at Tr. 20-21.)

stolen during the robbery had a value of more than $5,000,000.

(Id. ¶ 25.)

Months later, on November 29, 2019, agents executed a search warrant on a stash house located in the Bronx and recovered approximately $250,000 in cash and packages consistent with narcotics activity.  (Id. ¶ 34.)  Martinez's wife and children were residing in the home at the time of the search.  (Id.)

About a year after the gunpoint robbery, on May 26, 2020, Martinez drove from New York to Florida to purchase approximately seven kilograms of cocaine.  (Id. ¶ 36.) Unknown to Martinez, his Florida-based co-conspirators had arranged the cocaine purchase with undercover law enforcement officers.  (Id.)  On May 28, 2020, Martinez drove to a pre-arranged meeting location.  (Id. ¶ 37.)  In Martinez's car, a co-conspirator gave Martinez a bag containing multiple bundles of money.  (Id.)  Martinez, accompanied by an undercover agent, entered a building for the cocaine purchase.  (Id.)  Inside the building, another undercover law enforcement officer gave Martinez two kilograms of a substance mixture that contained some actual cocaine.  (Id.)  Martinez examined and smelled the substance.  (Id.)  The undercover officer asked Martinez if he wanted to "flake it," which means sell, or "cook it," which means to turn the cocaine into crack.  (Id.)  When Martinez responded that he wanted to "cook" the substance, he was placed under arrest.  (Id.)  During his arrest, Martinez stated, "We were gonna get ya'll and rob ya'll" and that there was only $18,000 in his vehicle.  (Id. ¶ 38.)  On the scene, law enforcement officers recovered approximately $11,115 from Martinez's person.  (Id.)  When officers executed a search warrant on Martinez's vehicle, they recovered an additional $18,000 from a bag and approximately $174,570 from a hidden compartment located in the center console.  (Id.)

B. <u>The Proceedings</u>

Throughout the proceedings, Martinez has had multiple attorneys.  At his initial appearance in August 2020, he was represented by retained attorney Elliot H. Fuld.  Thereafter, in October 2022, two members of the CJA Panel were appointed to represent him, Helen Cantwell and John Gleeson.  On January 26, 2021, retained attorney Alexander J. Pope appeared for him and, in July 2021, was joined by a second retained attorney, Eric W. Feinberg.  The Court appointed John Phillip Buza, a member of the CJA Panel, to advise Martinez with regard to pretrial matters.  Pope and Buza represented Martinez in the change of plea proceedings. David Touger, a retained attorney who was substituted for Pope and Touger, represented Martinez at sentencing.

On October 13, 2020, Martinez appeared before the Court for arraignment and entered a plea of not guilty.  (Minute Entry, October 13, 2020.)  On April 20, 2021, Martinez's counsel moved to sever Count Six, the Florida transaction, from the rest of the Indictment.  (ECF 98.)  In an Opinion and Order, the Court denied the motion to sever without prejudice.  (ECF 107.)  The Court advised Martinez that a motion to sever could be renewed on the same schedule as in <u>limine</u> motions.  (<u>Id.</u>)  Martinez's attorney did renew the motion to sever on the same schedule as motions in <u>limine</u>.  (ECF 138 at 1-2.)  At the Final Pre-Trial Conference, the Court denied Martinez's motion for severance.  (Minute Entry, July 21, 2021.)

On July 21, 2021, Martinez pled guilty to two counts of the Superseding Indictment: conspiracy to commit Hobbs Act Robbery (Count Three) and conspiracy to distribute and possess with intent to distribute five kilograms and more of mixtures containing cocaine (Count Six).[2]  (ECF 182 at Tr. 7-8.)  At the change of plea proceeding, the Court

---

[2] Prior to the plea, the Court appointed a second lawyer pursuant to the Criminal Justice Act to advise Martinez on pre-trial proceedings and who was also present at the plea.  18 U.S.C. § 3006A.

explained that, pursuant to Martinez's plea agreement, Martinez had agreed that if the Court sentenced him to 210 months' imprisonment or any term of imprisonment below 262 months' imprisonment, he could not appeal or collaterally attack the sentence.  (Id. at Tr. 18-20.) Martinez stated that he understood this provision of the plea agreement.  (Id. at Tr. 20-21.)

During the plea proceeding, the Court asked Martinez whether he was satisfied with his lawyer's representation of him and Martinez confirmed that he was satisfied.  (Id. at Tr. 5.)  When asked by the Court what he had done that led him to believe he was guilty of the crime charged in Count Three and Six, Martinez stated that he "conspired with others to commit Hobbs Act and steal the cocaine" and "conspired with others to go down to Florida and buy cocaine." (Id. at Tr. 22-23, 25.)  He also stated that he knew what he was doing was wrong and unlawful. (Id. at Tr. 23, 26.)  The Court found that there was sufficient factual predicate to support a guilty plea.  (Id. at Tr. 27-28.)

Martinez's sentencing took place on February 2, 2022.  (Minute Entry, February 2, 2022.)  At sentencing, defense counsel confirmed that Martinez had read and reviewed the PSR.  (ECF 224 at Tr. 3.)  The Court heard from defense counsel, the defendant, and the government.  The Court gave its statement of reasons for the sentence to be imposed and confirmed that it considered each of the factors under 18 U.S.C. § 3553(a).  (Id. at Tr. 17.) Without objection, the Court found a Total Offense Level of 34 and a Criminal History Category of II, yielding a Guidelines range of 168 to 210 months' imprisonment.  (Id. at Tr. 3-4.)  The Court sentenced Martinez to a below-guidelines sentence of 154 months' imprisonment.  (Id. at Tr. 27.)

On February 23, 2022, Martinez filed a notice to appeal of his conviction and sentence.  (ECF 237.)  On his appeal, Martinez was appointed new counsel, who put forth two

principal grounds for appeal that: (1) the sentence was imposed in violation of his due process rights; and (2) because the sentence was in violation of constitutionally-protected rights, his appellate waiver could not bar an appeal.  (Court of Appeals Docket, ECF 35.)[3]  The government moved to dismiss the appeal as barred by the plea agreement.  The Second Circuit granted the government's motion and dismissed the appeal, concluding that Martinez had "not demonstrated that the waiver of his appellate rights is unenforceable . . . ."  (ECF 441.)

On June 21, 2024, Martinez filed the instant motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255(a).  (ECF 567.)  He asserts four grounds for relief: (1) his sentence violates the Fifth and Eighth Amendments; (2) ineffective assistance of counsel for failure to investigate and present mitigating evidence; (3) ineffective assistance of counsel for the timing of the motion to sever; and (4) that the circumstances amounted to a violation of his constitutional rights and otherwise deprived him of due process.  (Id.)  The government has filed a response in opposition, addressing Martinez's arguments.  (ECF 598.)

LEGAL STANDARD

Generally, a person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in completely miscarriage of justice.'"  Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).  Review of a section 2255 motion "is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'"  United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting Graziano, 83 F.3d at 590).  In ruling on a section 2255 motion, an

---

[3] See Brief for the Petitioner, United States of America v. Rodriguez, 22-370 (2d Cir. 2023).

evidentiary hearing is warranted if the motion sets "forth specific facts supported by competent evidence, raising detailed and controverted facts that, if proved at a hearing, would entitle him to relief." Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013). An evidentiary hearing is not required when the petitioner's allegations are "vague, conclusory, or palpably incredible." Machibroda v. United States, 368 U.S. 487, 495 (1962).

Given Martinez's pro se status, the Court considers the entirety of Martinez's submissions "to raise the strongest arguments they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quotation marks omitted).

I.    Martinez's Validly Waived His Right to Collaterally Attack or Appeal His Sentence.

When a defendant "knowingly, voluntarily, and competently" waives his right to appeal or collaterally attack a sentence within a stipulated guidelines range, he may not then attack or appeal the sentence. See United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000). "'Waivers of the right to appeal a sentence are presumptively enforceable' and the exceptions to this rule 'occupy a very circumscribed area of our jurisprudence.'" United States v. Borden, 16 F.4th 351, 354-55 (2d Cir. 2021) (citations omitted). Even a sentence "conceivably imposed in an illegal fashion or in violation of the Guidelines, but . . . still within the range contemplated in the plea agreement" is permissible. Gomez-Perez, 215 F.3d at 319.

The record shows that Martinez's waiver of his right to challenge a sentence at or below the "Stipulated Guidelines Range" in the plea agreement was knowing, voluntary, and competent. (ECF 182 at Tr. 27-28.) At the plea proceeding, the Court asked Martinez to identify his signature on the plea agreement, whether he had discussed it with his lawyer, asked his lawyer questions about it, if he understood the agreement before he signed it, and if it contained all his understandings with the government. (Id. at Tr. 11-12.) Martinez answered yes

to each of these questions.  (Id.)  Martinez also denied that anyone had threatened or forced him

in any way to enter into the plea agreement or to plead guilty, nor had they promised him

anything or given him anything of value to do so.  (Id. at Tr. 12.)

        The Court then explained that Martinez was waiving his right to appeal or

collaterally attack a sentence if the sentence is within or below the stipulated Guidelines range of

210 to 262 months' imprisonment:

> In other words, the defendant waives his right to appeal or
> collaterally attack the sentence unless it is above the guideline
> range of 210 to 262 months' imprisonment; and in that event, the
> law will only allow him to appeal on the basis that the sentence is
> unreasonable or contrary to law.

(Id. at Tr. 16.)

        In the course of the plea proceeding, defendant conferred with one of his two

lawyers on the waiver provision.  (Id. at Tr. 20.)  The Court inquired of the defendant whether he

had any questions, and he stated that he did not.  (Id.)  The Court asked whether he understood

the waiver of his right to appeal in the plea agreement, and he confirmed that he did:

> THE COURT: Okay. Do you have any questions, Mr. Martinez?
> THE DEFENDANT: No.
> THE COURT: Okay. So do you understand the waiver of the right
> to appeal under certain circumstances set forth in the plea
> agreement?
> THE DEFENDANT: Yes, I understand.

(Id.)  The plea agreement executed by Martinez before the plea proceeding unambiguously stated

that "the defendant will not file a direct appeal nor a collateral challenge, including but not

limited to an application under [28 U.S.C. § 2255] . . . of any sentence within or below the

Stipulated Guidelines Range of 210 to 262 months' imprisonment . . . ."  (Plea Agreement at 6.)

        At the time of sentencing, Martinez had qualified for the safety valve, which the

government noted reduced his Guidelines range to 168 to 210 months' imprisonment.  (ECF 235

at Tr. 4.)  The Court noted that the Guidelines calculations included enhancements because a firearm was brandished during the robbery, a victim sustained bodily injury of a serious nature, a controlled substance of a value in excess of $5 million was the subject of the robbery, and because he was an organizer, leader, manager or supervisor with regard to the Hobbs Act conspiracy.  (Id. at Tr. 17-18.)  Noting the difficult conditions under which he was held during the pandemic and his difficult upbringing, the Court sentenced him principally to a below Guidelines sentence of 154 months' imprisonment.  (Id. at Tr. 27.)

The Court concludes that the waiver of his right to challenge a sentence under specified conditions was knowingly, voluntarily, and intelligently entered into and that it is in all respects enforceable.  Because the sentence was well below the Stipulated Guidelines range in the plea agreement, the waiver of the right to appeal or collaterally attack the sentence forecloses his motion under section 2255.  Martinez has not demonstrated that any of the narrow exceptions to waiver enforceability applies to him.  Borden, 16 F.4th 351 at 354.  Indeed "the waiver of appellate rights contained in [Martinez's] plea agreement" was the basis for the Court of Appeal's dismissal of his direct appeal.  United States v. Rodriguez, 22-370 (Order of May 19, 2023).

II.    Martinez's Constitutional Challenges Also Are Procedurally Barred.

Martinez's motion also is procedurally barred as he brings claims that he raised on his unsuccessful appeal to the Second Circuit, as well as grounds that could have been raised on direct appeal but were not.  Martinez challenges his sentence as a violation of his Fifth Amendment and general due process rights, which he had raised in his appeal to the Second Circuit.  (ECF 567 at 1-4, 9-10.)  "It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'"  United States v.

Sanin, 252 F.3d 79, 83 (2d Cir. 2001) (per curiam) (quoting Cabrera v. United States, 972 F.2d

23, 25 (2d Cir. 1992)).  Martinez raised his Fifth Amendment and due process challenge in the

appeal that was dismissed because of the appeal waiver.  As Martinez is barred from re-raising

arguments that have been previously raised on direct appeal, his due process challenge to his

sentence will be dismissed.

Martinez also raises new constitutional challenges in his section 2255 motion.

Generally, a defendant is barred from raising claims in a section 2255 motion that were not

raised on direct appeal.  Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).  This

procedural default rule functions as "a doctrine adhered to by the courts to conserve judicial

resources and to respect the law's important interest in the finality of judgments."  Massaro v.

United States, 538 U.S. 500, 504 (2003).  However, a "defendant can raise new arguments in a §

2255 motion if the defendant establishes (1) cause for the procedural default and ensuing

prejudice or (2) actual innocence."  United States v. Peña, 58 F.4th 613, 621 (2d Cir. 2023)

(quotation marks omitted).  To demonstrate "cause," a movant must show external circumstances

that prevented them from raising the issue on direct appeal.  Zhang, 506 F.3d at 166.

Martinez claims that his sentence violates the Eighth Amendment as well as his

general constitutional and human rights.  (ECF 567 at 1-4, 9-10.)  In his briefing, Martinez does

not address why these claims were not raised on direct appeal and does not raise grounds of

actual innocence or cause.  Although Martinez raises an ineffective assistance of counsel claim

against the attorneys who represented him during pretrial proceedings and sentencing, which is

discussed further below, he does not allege ineffective assistance of counsel on the part of his

appellate attorney.  Cf. Lynch v. Dolce, 789 F.3d 303, 319-320 (2d Cir. 2015) (finding that a

movant may show cause for failure to raise a claim on direct appeal if he can establish that

appellate counsel provided ineffective assistance). As Martinez's direct appeal did not raise these claims, and because he has not made a showing of cause and prejudice, the claims also are procedurally barred as a basis for relief under section 2255 and will be dismissed.

III.    Defendant's Ineffective Assistance of Counsel Claims Also Fail on the Merits.

Martinez raises two grounds alleging ineffective assistance of counsel during pre-trial motion practice and at sentencing, which both fail on the merits. (ECF 567 at 4-9.) A defendant asserting that counsel's performance was ineffective under the Sixth Amendment must satisfy the two-prong test established by Strickland v. Washington. 466 U.S. 668 (1984). "First, the defendant must show that counsel's performance was deficient." Id. at 687. "The determinative question at this step is not whether counsel deviated from best practices or most common custom, but whether his representation amounted to incompetence under prevailing professional norms." Harrington v. United States, 689 F.3d 124, 129-30 (2d Cir. 2012).

"Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id.

A.    Failure to Move to Sever.

Martinez asserts that his retained counsel performed ineffectively by not moving to sever Martinez's case from the Indictment, which grouped him together with members of the Puerto Rican DTO. (ECF 567 at 6.) He claims that this led the PSR to erroneously state that he was a member of the DTO and that the objection to this statement was raised "too late" in the proceedings. (Id. at 6-7.) He also contends that his counsel was ineffective for failing to move

to sever or to dismiss the charges related to the narcotics purchase in Florida (Count Six). (Id. at 7.)

Martinez claims that defendant's lawyers were ineffective in failing to move to sever or dismiss Count Six relating to the Florida transaction. (ECF 567 at 10-11.) To the contrary, Martinez's lawyers were vigilant in pursuing the severance issue. At a March 23 Conference before the Court, his counsel announced to the Court that "At this point severance certainly is in order, I would be making that motion." (ECF 99, Tr. at 14.) The Court had previously noted that severance motions should be made on the same schedule yet to be set for motions in limine. (Id. at Tr. 11.) Thereafter, Martinez moved to suppress certain evidence and with that motion, he also moved for a severance of Count Six of the Indictment relating to the Florida drug transaction. (ECF 98.) He argued, among other things, that "[t]he allegations in that count are completely unrelated to the other counts and codefendants, and hearing evidence about unrelated drug transactions would only lead to juror confusion." (ECF 98-1 at 8.) He argued that it would have no other purpose than to show propensity. (Id.)

The Court in a written Order denied the motion to suppress and concluded that the motion to sever Count Six was premature:

> Martinez has also filed a motion to sever Count [Six] from the superseding indictment. He argues that this count, which is the narcotics conspiracy charge in connection with the Florida attempted narcotics purchase, is completely unrelated to the other charges in the indictment. Martinez believes that the inclusion of this additional narcotics conspiracy charge will unfairly prejudice him and lead to juror confusion. At this stage, his motion will be denied without prejudice to renew when the Court sets a schedule for motions in limine. As the Court stated in the March 23, 2021 conference, motions to sever "should be heard at the final pretrial conference" and "would be made on the same schedule as your in limine motions." (Doc 99 (3/23/2021 Tr.) at 11–13.)

(ECF 107 at 6.)  The Court was aware that Martinez was not the only defendant seeking

severance and concluded that all severance motions of all defendants should be considered at one

juncture.

Martinez timely moved to sever Count Six in a motion filed in advance of the

Final Pre-Trial Conference, reiterating earlier arguments.  (ECF 138 at 2-3.)  The government

responded noting that the evidence with respect to the Hobbs Act robbery would be admissible in

a separate trial against Martinez on Count Six and thus there was no prejudice to him in having

Count Six tried with the other charges against him.  (ECF 146 at 10-12.)

At the Final Pre-Trial Conference, the Court heard argument on the severance

motion by Martinez's counsel.  The Court denied the motion and explained its reasoning:

> [I]n terms of joinder of counts and any prejudice resulting from
> them, the events in Florida are considerably less inflammatory than
> the evidence that the jury will hear on Counts Two through Five. . .
> . And I do believe that the evidence of having cash just south of
> $200,000 at the later point in time of the Florida event, is evidence
> that could come in on the Hobbs Acts robbery conspiracy count
> and perhaps substantive count as well. So I will properly instruct
> the jury and invite defense counsel to help me in that regard, in
> terms of limiting instructions, but the motion for a severance in
> that regard is denied.

(Final Pre-Trial Conference at Tr. 30.)  It was later that day that Martinez changed his plea to

guilty.

If his lawyers had failed to move for a severance—which is not the case—

Martinez would nevertheless need to show that the motion was meritorious and there was a

reasonable probability that the outcome would have been different if the motion had been

granted.  See United States v. Matos, 905 F.2d 30, 32 (2d Cir. 1990); Munson v. Rock, 507 Fed.

App'x 53, 56 (2d Cir. 2012) ("Strickland's prejudice prong requires [the defendant] to

demonstrate a reasonable probability that, 'but for counsel's errors, he would have not pleaded

guilty and would have insisted on going to trial.'"). The Court's actual denial of the severance motion is a sufficient basis to conclude that the motion was not meritorious.

There was an issue in the sentencing proceeding about whether Martinez had been associated with the Puerto Rico-based drug trafficking organization that was the subject of the Hobbs Act robbery; it was based upon the Court's reading of the PSR. (ECF 235 at Tr. 18-19.) Martinez's lawyer immediately challenged the assertion. (Id. at Tr 19.) The government agreed with Martinez's lawyer and explained that the reference in the PSR was to a different "Martinez." (Id. at Tr. 19-21.) The issue was cleared up and had no impact on any aspect of the sentencing.

      B.      Failure to Present Mitigating Evidence at Sentencing.

Martinez also alleges that his sentencing counsel was ineffective because he failed to present the Court with mitigating factors to consider when deciding the appropriate sentence, including Martinez's difficult upbringing and mental health issues. (ECF 567 at 4-5.) He further asserts that counsel ought to have secured a mitigation expert. (Id. at 5.) According to Martinez, his attorney "only briefly discussed some of Martinez's financial difficulties" at sentencing, but no other mitigating factors. (Id.) Martinez urges that this may be because his counsel did not investigate or question Martinez about his background. (Id.)

"With respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." Gonzalez, 722 F.3d at 130. Counsel's decision to hire or not hire an expert is entitled to "a 'strong presumption' of reasonableness." Dunn v. Reeves, 594 U.S. 731, 739 (2021). "[E]ven if there is reason to think that counsel's conduct was 'far from exemplary,' a court still may not grant relief if 'the record does not reveal' that counsel took an

approach that no competent lawyer would have chosen."  <u>Id.</u> (quoting <u>Burt v. Titlow</u>, 571 U.S. 12, 23-24 (2013)).

   Martinez's fails to show that his sentencing counsel's representation fell below an objective standard of reasonableness as his allegations contradict with the sentencing transcript, Martinez's sentencing memorandum, and the PSR.  Defense counsel's sentencing memorandum describes in detail Martinez's difficult upbringing, financial difficulties, and conditions of incarceration.  (ECF 214.)  The sentencing memorandum also detailed how his childhood left him mental "scars," for which he was prescribed medication, and walks through the mitigating section 3553(a) factors.  (<u>Id.</u> at 2, 5-11.)  Defense counsel also attached twenty letters of support from Martinez's friends and family to the sentencing memorandum, which the Court read and considered.  (ECF 214.)  The PSR further detailed Martinez's difficult upbringing and mental health issues.  (ECF 224 ¶¶ 94-97, 104-105.)  In defense counsel's statement to the Court, he urged for a sentence variation and referenced the PSR's description of Martinez's difficult upbringing and mental health.  (ECF 235 at Tr. 4-5.)  Martinez's counsel presented extensive mitigating circumstances that the Court considered in reaching its ultimate below-guidelines sentence.  (<u>Id.</u> at Tr. 17.)  The Court's judgment included mental health treatment as a special condition of supervised release.  (ECF 223 at 5.)  Martinez fails to identify any additional issues that his counsel should have investigated and does not show that such an investigation "would have led to a more lenient sentence."  <u>See</u> <u>U.S. v. Herrera</u>, 186 Fed. App'x 109, 112 (2d Cir. 2006) (summary order).

CONCLUSION

      Martinez's motion for section 2255 relief is DENIED.  The Clerk is respectfully directed to terminate the motion (19 Cr. 521, ECF 567 & 618) and to close the civil case, Martinez v. United States of America, 25 Civ. 3638 (PKC).

      Martinez has not made a substantial showing of the denial of a constitutional right, and accordingly, a certificate of appealability will not issue.  28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

      SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  May 5, 2025
      New York, New York

MAILED TO:

Jason Martinez
Reg. No. 88136-054
FCI Ray Brook
Federal Correctional Institution
P.O. Box 900
Ray Brook, NY 12977